OPINION
Appellants, Martin and Barbara Belich (dba Ventura Properties), filed a complaint against appellee, Westfield Insurance Company, in the Lake County Court of Common Pleas on September 30, 1998. They alleged they suffered a loss when appellee breached its insurance contract by failing to pay for damages to a one-story masonry building, that they owned, containing approximately 9,575 square feet situated at 35700 Lakeland Boulevard, in Eastlake, Ohio.
Appellants, who did business under the name of Ventura Properties, owned and rented out the property at 35700 Lakeland Boulevard, which had previously been operated as a party center. On October 9, 1997, appellants executed a three-year lease with Ronald E. Thomas, Inc., which planned to use the property to operate Rayno's Sports Bar. The lease was to commence on March 15, 1998, but Thomas was permitted rent-free access to the premises beginning on January 1, 1998. He had paid the security deposit and the rent for the last half of March. The lease did not include an occupancy requirement. Improvements had to be made in order for it to be operated as a sports bar rather than a party center. In his deposition, Mr. Belich testified that he was not aware when the renovations would begin and had no specific knowledge of any of the details about the renovations.
Mr. Belich was in Florida from January until May 1998. On May 21, 1998, he returned from Florida and noticed water running out of the back door of the building at 35700 Lakeland Boulevard. He entered the building, which was wet, steamy, and smelled like mildew. He noticed that hot water was running from a shower in the shower room. Steam from the hot water had caused ceiling tiles to fall down, blocking the drain and causing water to flood the entire building.
Donald Meier, Westfield's field supervisor, investigated the claim. He noticed many interior surfaces were covered with mold, which he believed indicated that the damage had occurred over a matter of days. He ascertained that no commercial activity had occurred in the building for sixty days or more. He felt that the building was vacant and not being renovated because the building was in essentially the same condition as it had been when he had visited the building in 1996. At the time of damage, Mr. Thomas had not obtained city approval to remodel the building. Approval was obtained on May 28, 1998.
On July 23, 1999, appellee filed a motion for summary judgment, in which it alleged that because the building was vacant for more than sixty days, the damages claimed by appellants were not covered by the insurance policy. They cited the following clause in the policy:
"6. Vacancy
"a. Description of Terms
 "(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:
 "(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.
 "(b) When this policy is issued to the owner of a building, building means entire building. Such building is vacant when 70% or more of its square footage:
"(i) is not rented; or
"(ii) is not used to conduct customary operations.
 "(2) Buildings under construction or renovation are not considered vacant.
"b. Vacancy Provisions
 "If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
 "(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
"* * *
"(d) Water damage; * * *"
In support of his motion in opposition to summary judgment, appellant submitted the affidavit of Ronald Thomas. In the affidavit, Mr. Thomas stated that he "immediately began the renovation process after signing the lease" by: hiring an architect; cleaning; hiring his son to manage the project; obtaining government approval; and, removing a stage and coat racks. In paragraph nine of the deposition, Mr. Thomas stated: "I was in the building, overseeing the renovation process, approximately every two weeks from 1/1/98." That paragraph of the deposition was typed, except for the word "approximately," which was hand-written by Mr. Thomas. From the deposition, it is unclear exactly when the items were removed from the building, how long it took to remove the items, or what sort of renovation Mr. Thomas was overseeing. On September 29, 1999, the trial court sustained appellee's motion for summary judgment.
Appellants assign the following as error:
 "The trial court erred when it denied appellant's motion for summary judgment and granted appellee's motion for summary judgment, because insurance coverage existed under appellant's policy when construing interpretation of the [word] `renovation' against appellee and in favor of appellant as required by law."
Appellants assert that because the word renovation, which was not defined in the insurance policy, was ambiguous, it should have been liberally interpreted to mean all phases of renovation, including, among other things: architectural planning; engineering; site inspection; and, obtaining government approval. They argue that reasonable minds could have concluded that by hiring an architect, applying for government approval, and removing a stage and some coat racks, Mr. Thomas was engaged in the process of renovation.
The mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322,474 N.E.2d 271. A court must give undefined words used in an insurance contract their plain and ordinary meaning. Miller v. Marrocco (1986),28 Ohio St.3d 438, 439, 504 N.E.2d 67. Thus, the interpretation of this insurance contract is a matter of law and we must review that interpretation de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.
Webster's Dictionary, defines "renovation" as "the act or process of renovating" or "the state of being renovated," which is hardly helpful. It defines "renovate" as "to restore to a former state: make over: renew." Neither of these definitions accurately describes the process by which one would convert a party center into a sports bar. Such activity would be considered remodeling, which was not provided for in the insurance contract.
Neither party has cited any Ohio cases, nor can we find any, that are helpful in defining renovation. Appellee has, however, cited numerous cases from other jurisdictions, the most relevant being Will RealtyCorp. v. Transportation Ins. Co. (1986), 22 Mass. App. Ct. 918,492 N.E.2d 372. In Will Realty, the Worcester, Massachusetts Appeals Court concluded that vacancy provisions in insurance policies reflected the commonplace observation that the risk of casualty is higher when premises remain unattended. Id. at 373. It further explained
 "as applied to a finished building, "construction" can be taken to include remodelling or refurbishing, still the phrase looks to some substantial continuing activities of that sort on, rather than off, the property, and here there were none on the property (and indeed, virtually none off)." Id.
We agree with the reasoning of the Massachusetts Appeals Court. Clearly the purpose behind the Westfield insurance policy was to protect itself from the very sort of liability as is at issue in this case. Renovation contemplates something being done at the building, not merely planning to renovate, remodel, or refurbish. However, the way the policy is written, even one day of renovation done within the previous sixty days would be sufficient to overcome the vacancy clause. The removal of a stage and some coat racks would be sufficient to constitute renovation.
Pursuant to Civ.R. 56(C), a party is entitled to summary judgment if it can demonstrate that there exists no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. See Dresherv. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Civ.R. 56(E) provides in part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
The affidavits and depositions submitted in opposition to the motion for summary judgment are insufficient to show any disputed issues of fact that would be adequate to overcome it. The extent of the work done as described in the affidavits was the removal of the stage and the coat racks. Whether that was done within sixty days of the damage is not addressed. Martin Belich was unaware of what was happening at the building. In his affidavit, Mr. Thomas attested to the fact that he was in the building every two weeks to oversee the renovation process. However, he fails to describe in even vague terms what the renovation process entailed. Nowhere does appellant point to any evidence in the record of activity that occurred at the building during the sixty days preceding the damage. Therefore, there was no genuine issue of fact that the building was vacant according to the insurance policy.
Appellants' assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
 ________________________________ NADER, J.
FORD, P.J., O'NEILL, J., concur.